## EPHRAIM PALMER ET AL.

### v.

## WILLIAM O'DONNELL.

DRAINING POND—COMMISSIONERS OF HIGHWAYS.—A was the owner of land through which a public highway passed, and his land was as to appellee's the dominant or superior estate, and the commissioners of highways, in order to render the road good, constructed a tile drain on A's land to drain a pond there, which formerly had been drained by ditches. The course of the water was changed, but it emptied into the same place on appellee's land as formerly, and the flow of water over appellee's land was not increased, and no actual damage done him by the change in the course. *Held*, if A had the right to drain his own land by means of this tile, so had the commissioners, and the fact that the water did not come from the same direction could make no difference to appellee.

APPEAL from the Circuit Court of La Salle county; the Hon. G. T. GILBERT, Judge, presiding. Opinion filed August 20, 1884.

Messrs. BUSHNELL & FULLERTON, for appellants; cited Peck v. Herrington, 109 Ill. 611.

Messrs. HALEY & O'DONNELL and Messrs. DUCAN & O'CONOR, for appellee; that acts done under a legal sanction, where no negligence or unskillfulness is shown in the doing of the work, afford a right of action if injury to private property results therefrom, cited T. W. & W. Ry. Co. v. Morrison, 71 Ill. 618; Rigney v. Chicago, 102 Ill. 73.

For every invasion of an absolute right, at least nominal damages can be had: Pfeiffer v. Grossman, 15 Ill. 53; Plumleigh v. Dawson, 1 Gilm. 544; Wood's Mayne on Damages, 9–12.

If the proprietor of an upper field, even in the course of the use and improvement of his farm, discharge surface water by artificial means, increased in quantity or in a manner different from the natural flow, or in an unaccustomed place, upon the lower lands of another, to the injury of such lands,

he is liable for all damage done.   And the liability of a private corporation is in this respect the same as that of an individual: Washburn on Easements and Servitudes, §§ 353 and 356; Stout v. McAdams, 2 Scam. 67; Gillham v. Mad. Co. R. R. Co., 49 Ill. 484; Laney v. Jasper, 39 Ill. 46; I. C. R. R. Co. v. Middlesworth, 46 Ill. 500;  Livingstone v. McDonald, 21 Iowa, 160.

A city has no more power over its streets than an individual has over his own land; and it can not, under the plea of public convenience, be permitted to exercise its dominion to the injury of the adjacent property in a mode that would render a private individual liable in damages, without being itself liable: Nevins v. Peoria, 41 Ill. 502; Aurora v. Gillett, 56 Ill. 132; Aurora v. Reed, 57 Ill. 33; Jacksonville v. Lambert, 62 Ill. 519; Bloomington v. Brokaw, 77 Ill. 194; Dixon v. Baker, 65 Ill. 518; Pekin v. Brereton, 67 Ill. 477; Alton v. Hope, 68 Ill. 167; Pettingrew v. Village of Evansville, 25 Wis. 223; Tearney v. Smith, 86 Ill. 391.

LACEY, J.  This was an action on the case by appellee against the appellants, for breaking and entering the close of appellee.   On the trial, in November, 1883, the appellee recovered a verdict and judgment against appellants for eight dollars and costs of suit.   The appellants, Ephraim Palmer and David Terry, were commissioners of highways in the territory comprising the land of appellee and of John Dobbins, another of the appellants.   John Dobbins was the owner of the land through which the road passed and in which the tile drain complained of by appellee was laid, and he did the work of laying the tile under the employment of the commissioners.

The lands of Dobbins and of appellee and the road were situated as to each other as follows: appellee owned a farm bounded on the north by an east and west road known as the town line road, and bounded on the west by a north and south road.   Appellant Dobbins owns eighty acres of land lying west of appellee's land, the length of the eighty being east and west.   North of this last eighty and north of this town line road, Dobbins also owns the land.

Eighty rods west of the northwest corner of appellee's land, and about opposite the line dividing the east and west forties of Dobbins' eighty, is Dobbins' residence, north of the town line. West of this house and on the northwest corner of this plat is the pond in question, lying both in the north field and in the town line road. This pond was a wet weather pond, and was created and supplied by surface water. It covered about three fourths of an acre of land, and except in high water had no drainage. It was two to three feet deep in places. This pond was formerly drained to some extent southwardly across Dobbins' land, by means of a ditch to about the center of Dobbins' south eighty acre tract, and then, by a continuation of the drain eastwardly to the north and south road, to appellee's west line, and then northerly on the west line of the road to a culvert under the road, and through such culvert onto appellee's land, and thence southeasterly, through low ground and a ditch, to Buck creek, which runs across appellee's land northwardly and southwardly. Before the present tile drain complained of, this system of ditches was the only outlet for the pond, though of late years the ditch running southwardly from the pond had become filled up, and caused the pond to fill and back over the east and west road, rendering it at times unfit for travel.

In the spring of 1882 the appellants dug the drain complained of, three and one half feet deep east from this northwest pond along the highway, about one third of the way to Buck creek, and let it empty into a ditch running across the northeast corner of Dobbins' south eighty to the west line of the north and south road, to the west line of appellee's land, thence down the west side of the said road to the same culvert where the water had formerly discharged onto appellee's land through the system of ditches or drains commencing to run south from the pond drained by the tile. Hence the water was discharged onto appellee's land at the same place that it had been accustomed to flow for a great number of years. (The map of the situation is as follows: * * *)

The testimony shows that the flow of the water over appellee's land was not increased in any perceptible degree, and no

Palmer v. O'Donnell.

actual damage was done him by the change of the course of the water from where it had run to the tile drain east down the road, and then across Dobbins' land to the same place where it had formerly emptied onto appellee's land.

By means of this tile the road was drained of the pond and the road rendered good and appellee not injured. From the bottom of the pond in question to Buck creek the fall was nearly seven feet. There was a natural fall from this pond along the line of the tile drain to appellee's land, though in order to drain the pond, some slight elevations would have to be cut through. The commissioners of highways would have the same right to drain the road as Dobbins would have had to drain his land. If Dobbins would have had a right to drain his own land by means of this tile drain, so would the commissioners. Nevins v. City of Peoria, 41 Ill. 509; and see also what was said by this court in Comm'rs Pre-emption, etc., v. Whitsitt, *ante*, decided at the present term. The land of Dobbins as it was situated, including the pond in question, was, as to that of appellee, the dominant or superior estate, and that of appellee was the servient estate, and the point where the water from this pond was discharged onto appellee's land was the usual and customary place where the water had been wont to flow on his land, and the fact that it did not come from the same direction could make no difference to him.

In the interest of good husbandry, Dobbins would have had the right to increase the original flow by means of drains, in order to drain any ponds or depressions on his land, and the appellee could not complain of such increase or recover for any damages for it. It appears to us that the principle that should govern this case is fully settled by the case of Peck v. Herrington, 109 Ill. 611, whatever may have been thought of the law prior to the time that opinion was rendered. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.